Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The 1st Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-8-1280, People v. Charles Johnson. Hey, good afternoon, everybody. I'm Justice Walker. I have with me Justice Hyman and Justice Pierce, and I'd like to have the lawyers to please introduce yourself. Good morning, Your Honors. My name is Joseph Benach, the Office of the State Appellate Defender, and I'm representing Charles Johnson. Okay. Mr. Benach? Good afternoon, Your Honors. Adam Motz, M-O-T-Z for the people of the state of Illinois. Okay. And Mr. Motz. And how much time do you need, Mr. Benach? I anticipate that my opening will go about 10 minutes. Okay. And how much time for rebuttal? You want five minutes for rebuttal or 10? Five minutes should be good, Your Honor. Okay. And Mr. Motz, how much time do you need? I'm estimating 10 to 12 minutes, Your Honor. Ten to 12? Okay. That's fine. And if for some reason you're not able to get to a particular argument because we're asking questions and you run out of time, just let us know and we'll give you time to finish up and close out. We'll give you another 30 seconds or so to do that. Okay. With that, Mr. Benach, you may proceed. Good afternoon, Your Honors. Johnson has raised several issues on appeal. The state has conceded that as to issue four, Johnson's conviction for armed habitual criminal must be reversed. As to the remaining issues, I intend to primarily address the first concerning the admissibility of other crimes evidence, but I'm happy to answer any questions that Your Honors may have about the remaining issues. At trial, the court permitted Johnson's former girlfriend, Asia Rags, to testify that following Lynch's death, Johnson hit and threatened her. The court also allowed Rags to testify regarding two alleged prior incidences of domestic violence that Johnson committed against her. The court erred by admitting this evidence. First, the threats and abuse that Johnson allegedly directed toward Rags while the two were staying in Iowa city did not constitute admissions of guilt. Rags testimony that Johnson hit and threatened her such that she had to leave the second story window should not have been admitted as there was no evidence that this was related. The abuse and threats were related to the shooting of Lynch. Critically, Rags never testified that they were related. Absent such testimony, the logical inference is that this is just a continuation of their violent tumultuous history with one another. Moreover, Rags testimony that Johnson asked her about the status of the investigation and told her to tell the police that she had not seen him at the scene in no way established that these abuse and threats were related to the shooting of Lynch or that they constituted admissions of guilt. Johnson knew that people online were saying that he had shot Lynch. It was the whole reason that he had fled to Iowa city in the first place. So it makes perfect sense that he would be curious about the status of the investigation. What about the fact that he told her to, for an alibi? Well, Johnson told her to say that he was not at the scene, which is consistent with Johnson's position, that he was not at the scene and was not a shooter in that sense, that it's not really an admission of guilt. It's a consistent denial that he was, that he was at the scene and that he was at the shooter. You're not saying she can't testify. No, I'm saying the state is trying to link this, these statements to the abuse and threats to show that the abuse and threats were related to the shooting of Lynch. So you're only talking about, but as far as his statements with regard to her test, her, her, her knowledge of the investigation, what he wanted her to say or do, you don't have a problem with that. No, those are, those are his statements and they were, they were admissible. My issue is with trying to then use those statements as evidence that he was hitting and threatening her, threatening her in order to influence her testimony or that those that, that somehow constituted an admission of guilt on his part. Well, with regard to the pre event abuse and the post event abuse, why isn't that all a harmless error? Well, it's not a harmless error because it's important to keep in mind here that Johnson, he testified in his own defense. He provided a two witnesses to corroborate his alibi. So really at the end of the day, this case comes down, it came down to a contest of credibility, one that the jury likely would have resolved in Johnson's favor had the state not, you know, portrayed him as a, as this violent criminal with a propensity for using violence against people that he's close to. Well, close to what's his connection with Lynch? He went close to the Lynch, right? So, because they were together on some jobs. He was there, his relationship with Lynch was extended beyond just the, just the burglaries. They were friends going back to, I believe they said high school, but it may have even been before that. Okay. And so, and so were two others involved in the burglaries. There are three of them. Why should the jury disbelieve two witnesses who knew him for a long, long time that that was him? There was no question it was him. There was nothing about their identification at the station with regard to it was Johnson. I don't see it as being a close call at all. Is it? Well, Ray actually, and Johnson did not know each other. And I believe that Joel Ray had only recently become friends with the other, the other witnesses in this case. He had only recently. I'm not talking about Ray. I'm talking about the other two who were. Yeah. Well with, in regard to rags though, it's critical that she did deny that Johnson was at the scene originally. So there's definitely credibility issues in regard to her testimony. The reason why the state wanted to bring in what happened afterwards, because he was trying to do, she was scared of the state. Did argue that during closing arguments that the, the, this other crimes evidence should be admissible to explain why Asia rags denied seeing Johnson at the scene. But there was just no evidence that rags did testify. She's when, when she was talking to the police, she said that she felt as though she should be, she should be scared, but she never indicated that her fear had anything to do with Johnson. And in fact, she even testified that she didn't have a real good explanation for why she was there. So the, you know, and then there's also the fact that she had just been with Johnson earlier in the day, there was no animosity between them. They rode the train together. They rode the bus. He was following her. She said that the conversation was completely casual. Wasn't he following her? She didn't expect him to be following her and he followed her until the last I get on the bus and the train or whatever. And then the final leg, he didn't follow her, but couldn't explain why he was following her. Correct. But there, again, they, they left and they parted very amicably. He still was following her. I mean, here is a relationship that was not a healthy relationship, right? A lot of abuse. And there was abuse before and there was abuse afterwards. Correct. But in regard to the witnesses identifying and identifying Johnson, most of those witnesses have a motive to identify Johnson based on Johnson's testimony, which is that they were upset with Lynch. They were upset with Johnson because they had been cut out of these burglary proceeds. And so if you don't have this evidence that Johnson is this violent guy who just, you know, he, he just attacks people for essentially no reason. The jury would have then been forced to ask the question, well, what's more likely that Johnson just, you know, murdered his friend for no reason whatsoever or that Ray killed Lynch over money. Ray, who has a, as a, you know, a financial interest in this, in this, in this murder, something that Johnson doesn't have. There's absolutely no, there'd be no explanation for Johnson for, for committing these actions, except for if the state portrays him then as they did as this kind of violent person with a, with a propensity for violence. Well, all the violence we had to do against rags. I'm sorry, your honor. All the violence had to do before the incident, the violence was to rags, right? Before incident, there was violence. After the incident, there was violence after the incident. I mean, she, she was told certain information. I don't, you don't see a difference between the pre abuse in the post abuse. Well, in the sense that this, the fact that Johnson, he does have, you know, he does have this history of violence against rags, but the state is then trying to use that violence of history against rags to supply him with a motive to kill somebody else, to have him, you know, attack some completely different person, which really just gets at the heart of this issue is that there's no evidence that the shooter was targeting rags in any way the shooter was after Lynch. And so the fact that Johnson has this past abuse against rags is, is irrelevant to under the facts of this case. If the owners don't have any further questions about that issue, I'll move on to the next issue, which is that the court erred by failing to take any action in response to Johnson's statement that he was denouncing his trial counsel. Just to briefly summarize, Johnson said that he was denouncing his counsel. He said, I don't need her right now. I can make the arguments on my own and go over it because I haven't been over the case and I don't know anything that's happening. I don't have my pretrial to go over. Counsel hasn't gone over with me or nothing. The court treated this as a request to proceed pro se and denied it because in the court's view, it was a delaying tactic. Johnson maintains that the court erred by denying this request, but if this court should find otherwise, it should nevertheless remand for a Krenkel hearing. Johnson stated that he was denouncing his counsel and even provided a reason for the denunciation, which was that his fail, his counsel's failure to keep him informed about his case, which is very significant in this case because it means that Johnson was not able to assist in his defense in any way. And where Johnson is testifying at trial and presenting an alibi defense coordination between defense counsel and defendant was essential here. And by bringing that claim to the court's attention, that was all Johnson needed to do to trigger a Krenkel inquiry, which the court did not hold. The court just treated this solely as a request to proceed pro se and then denied it. The court failed by doing that. And this case should therefore be remanded for a Krenkel hearing or alternatively so that Johnson can represent himself during post-trial proceedings. And lastly, the state concedes, as I mentioned, that Johnson was improperly convicted of armed habitual criminal pursuant to this concession, this case should be remanded for a new sentencing hearing on Johnson's first degree murder conviction as well. And that's because Illinois courts have held that where it's unclear what weight the court assigned to a subsequently reversed. Was the, was the, the, the sentence on the first degree murder was not enhanced by the armed habitual offense. It's Johnson's position that the court, because it was under the impression that it was sentencing Johnson for both a first degree murder and a class X felony. When we now know that it really should have been only sentencing him for first degree murder and a class two felony that there's really. Why wouldn't, why wouldn't we just order the resentencing on the, on the proper, the proper charge rather than ordering a resentencing on the first degree. Why don't we need to order a recent exam? Cause that was a separate sentence. It was 50 years plus the 25, of course, on just the first degree. Correct. Just help me a little because I'm, I'm not on anybody's side here. Just what, so why do we need to send it back to resentencing for that to help me? Why, why I should agree to that? Well, because of the possibility that where the court is thinking that it's sentencing somebody for class X, that that sentence will then influence the first degree murder conviction. And there are a number of cases in Illinois where courts have held that, you know, on a, in a one act, one crime situation where there was two murders intentional murder and a felony murder, the court would then vacate the felony murder, but they still remand for resentencing on the intentional murder because there's a possibility that the fact that the felony murder sentence would affect then the, the intentional murder sentence. And you see that in the context of void Aguilar convictions as well, even where there's no evidence in the record that the court relied on the, the, the vacated conviction under Aguilar courts have remanded for resentencing because there's in the interest of transparency and in the interest of ensuring that the other sentences for the other convictions were not influenced by the reverse or void convictions. In some, this court should reverse Johnson's conviction for first degree murder and remand for trial or vacate reverse Johnson's conviction for armed habitual criminal and remand for resentencing on his first degree murder conviction or remand for a new crankle hearing or new post-trial proceedings during which Johnson will be permitted to proceed. I'd like to reserve the rest of my time for rebuttal. Your honor. Good afternoon, your honors. And may it please the court out of notes for the people defendant was in a fraught relationship with Asia rags. They dated on and off again, getting back together and breaking up multiple times. A key marker of that relationship was defendants abuse of Asia rags. He was violent with her. He stalked her and he ultimately killed someone that was allowing her to stay at his apartment. And that person was like, I didn't know that stay at her. I mean, where do you get that? I mean, isn't that, that's a conclusion in your mind, but I don't see any evidence of that. Where's that evidence? Tell me. Your honor Asia's testified that she was living with a Lido lunch and his girlfriend, Larissa Mackey. At the time she moved in. And their child and their child. Right. So what? Correct your honor. So she was living with them at the time. She moved into their apartment in September of 2014. This murder occurred in November of 2014. So what, so what, so what's that have to do with murder with, with Lynch being shot? Well, in this case, it had to do with the fact that Lynch was at the apartment where Asia was staying and because. His girlfriend. So what. Correct your honor. Well that's why this other crimes evidence was relevant here because it established a motive for defendant to do violence either against Asia or someone with whom she associated based on his issues with Asia. And they both associated with lunch. I'm sorry, your honor. They both associated with him. That's right. Your honor. But in this case, Asia was living in the apartment where Lynch lived. And when defendant showed up at that apartment, after he had followed her all the way from her job in the Northern suburbs to the South side of Chicago, when he showed up there and saw Lynch, he shot Lynch dead in front of his friends, in front of his family, because Asia was at that apartment. Now, is there a rational reason for someone to do that? Of course not, but that's what defendant did here. And his prior abuse of Asia demonstrates that when he has an issue with Asia, he inflicts violence on her or against people in her vicinity, whether she has a close relationship with those people or not. So for example, in the January, 2014 incident that Asia testified to, she was living in an apartment with a woman named Luthania and a man named Theodore. Defendant was at the apartment with her. The two got into an argument and defendant was asked to leave. He refused to do so. And he ended up pushing Asia down the stairs, but he also pushed Theodore down the stairs, perhaps because there was a relationship, perhaps not, but Theodore was in the vicinity. And so his issue with Asia Rags led him not only to do violence against her, but against people that were in her vicinity. The same thing happened here. He had an issue with Asia. He showed up at the apartment where she was staying. And even though he didn't inflict violence against Asia in that instance, he inflicted it against someone that was in her vicinity. Now it could be argued that that was a further perpetuation of the abuse that he had been inflicting against Asia for all those years. But it certainly is a continued demonstration of the fact that his issues with Asia serve as motive for her to do violence against her. That said, even if... Mr. Motz, let me ask you a question. What was the state's theory of the prosecution as to the shooting? Was there a theory that the defendant went to the apartment to shoot Lynch or to shoot Riggs, or that he just showed up at the apartment and started firing and Lynch happened to get killed? Well, the theory was that he showed up to the apartment because that's where Asia was and he ended up shooting Lydell Lynch. It could have been either. It could have been that he showed up to kill Lynch, or it could have been that he showed up to kill Asia. But in this case, either way, he showed up and he did kill Lynch. I understand it. But what was the state's theory that he was there and started shooting and it happened that Lynch got killed or that he went there with the intent to kill Lynch or to kill Riggs separately? I'm just asking, what was their theory? I believe it was argued specifically that he showed up because Asia was there. I'm sorry if that's... Yeah. Okay. That's fine. Thank you. As Justice Hyman noted, defendant did make efforts to create a false alibi here. The people were not using Asia's testimony as evidence that because defendant was abusive to her, he would continue to be abusive to her and kill Lynch. No, the point was that his issues with her led him to do violence to people. So even if this other crimes evidence was inadmissible, this court should still find that any purported error in admitting that evidence was harmless because the outcome of defendant's trial would have been the same. There were multiple eyewitnesses at the party who testified that they saw Lynch, excuse me, they saw defendant show up and kill Lynch. And that stood in stark contrast to the evidence that defendant presented, which consisted of testimony from his girlfriend, testimony from his purported alibi witness who had no reason to remember what would have otherwise been an unremarkable day and defendant's own self-serving testimony where he attempted to establish that he wasn't at the apartment on the night of the murder. But that's inconsistent with his actions following the murder in Iowa city, where he asked Asia Rags to lie to the police about whether he was present at the apartment that night and made threats against not only her, but her family, and then wouldn't let her leave the house where they were staying. And so she had to escape by climbing out of a second story window. So defendant's outcome at trial here would have been the same. The jury would have weighed the evidence. They would have drawn reasonable inferences there from, and they would have ultimately found defendant guilty. As to the other point that was discussed during today's hearing, defendant's statement that he was respectfully denouncing counsel did not reflect a critical inquiry. In this case, defendant stated that he was respectfully denouncing counsel, but the reason he gave for that was that he didn't need her. His statement of denunciation did not cast aspersions on counsel's performance. It was not a clear claim of benefit. Didn't he say that he had not really had an opportunity to speak with her? Not quite your honor. Defendant stated that he was denouncing counsel because he didn't need her. He then went on to state that he could make the arguments on his own, but he was unprepared to do so. He stated that he hadn't been over the case. He didn't know what was happening. He didn't have his pre-trial to go over and counsel hadn't gone over it with him. Now saying that. So justice Walker is right. He hadn't had an opportunity to go over with his counsel. So why at that point, isn't it incumbent on the court to admonish him, to see whether he wants to represent, he has the voluntary and knowing to represent himself. Well, for a couple of reasons, your honor. First, his statement that he wasn't prepared to make his arguments is not the same as a statement that his counsel's performance was deficient. So that was not a clear claim of. He said very clearly he didn't want his kind of, he wanted to go ahead himself. He doesn't have to use some magic words. He wanted to go ahead. If he didn't want her as part of the sense. Okay. So at that point, then the judge have an obligation under our law and the statute to admonish. No, your honor, the people maintain that he did not because a mere statement that he didn't wish to go forward with his counsel is not the same as a statement that he believed his counsel's performance was deficient. That was not a clear claim of ineffective assistance of counsel. It was merely a statement to the court that he wished to terminate his case. So that he could proceed on his own. That's what I'm saying. I'm getting away from the crankle. I'm saying that it's where the judge, shouldn't the judge have admonished him with regard to represent himself? What happened is the judge didn't give him any admonishments and didn't let him represent himself. Well, in this case, your honor, the judge was already familiar with defendants previous requests to proceed pro se in which he also changed his mind. So what did he change his mind? That was before trial. You don't see a difference between before trial in sentencing. Is that, is that what the law says? Is that the same? Well, your honor, this court is permitted to, this court is under its own precedent required to review the entire record in assessing this decision. And here, although the defendant does have a right to represent himself, that right is not absolute. There are factors that a trial judge can rely on in denying a defendant's request to proceed pro se. What factors are present here? Multiple factors, your honor. First that defendant was incapable of making a knowing and intelligent waiver of his right to counsel. The trial court, again, the trial court was already well familiar with defendants previous requests. I'm not talking about previous requests. That was pre trial. And my question was, which I don't think you've answered is he has another chance after trial. It's a separate, it's a separate proceeding, the sentencing. Now he says, I want to rep myself on sentencing. The judge shouldn't he have admonished him at that time? He didn't. You're saying he goes back to what happened before the trial. Well, before trial, he changed his mind. Maybe he'll change his mind again. We don't know, but he didn't give him the admonishments. Well, you're not your honor. Second prong error. Excuse me, your honor. Another factor that the court is permitted to rely on is whether the defendant was using this as a delaying tactic. And so in that case, defendant's conduct previously requesting and going back and forth. With his request to proceed, pro se would give the trial court a basis to believe that defendant was using this as a delaying tactic. That doesn't have much water. When you consider what the facts are here. The second time he wasn't there here. Or his regular counsel wasn't there the first time. This is his time in court. He's asking to be prepared. He says he's not prepared. He says he hasn't met with his counsel even. And so a short continuance. I don't see that as being trying to. Be dilatory at all. I don't. Continue to spend more time in jail. Just, just go back to the cell. And that would be the extent of what would happen if he were trying to delay at that point. There's no gain to that. Well, your honor, beyond delay is a question of whether defendant was using the tactic as a delaying tactic. And that's the third factor. Which is the third factor that a court can rely on in denying defendants request. And as this court stated in people versus Washington, this court considers the overall context of the proceedings, which includes. Defendants conduct following his request to proceed pro se. So here. Wait, wait a minute. Wait a minute. You're saying. His outbursts, which are totally. Wrong. Right. We can all agree his outbursts are wrong. But nobody knew he was going to have those outbursts. He didn't have outbursts like that. Before. So how can you say that we are to put, take account of something that didn't happen at the time, the judge and given the admonishments. Because your honor. The judge did previously admonish defendant and his multiple. I already went through that. I said. There is a difference. You won't say that there is a difference, but there is a difference under the law between the sentencing. In the trial. They are different stages of the proceedings. Of course, your honor. But the defendant had already stated to the court that he was incapable of representing himself. Which the court could rely on trial for trial. Right. He said he changed his mind. For trial. That doesn't mean in sentencing. He has the right. Does he have a custody right to represent himself? Yes or no. Yes, your honor. But that's right. It's not absolute. He didn't wave that. Right. Where did he wave that? Right. For sentencing. Yeah. In fact, he asked for it. He wants to represent himself. So the judge has an obligation to test that. Yes, your honor. The defendant has a right to request to proceed pro se. And if the court determines that it's something that the defendant is capable of doing, if he's capable of making a knowing and intelligent waiver of his right to counsel. And the judge would grant that request. He didn't determine it. Did he? He didn't ask him any questions. Well, in this case, your honor, The court explicitly stated that he viewed this request as a delaying tactic. Going through that. I don't think that holds much water. So what other argument besides the delaying tactic do you have? Your honor, the defendant engaged in serious and obstructionist. That all happened afterwards. I mean, The judge, nobody could have predicted that. How can you use that against him? Tell me. Well, your honor, this court reviews the entire record. We have viewed the record at the time. The request is made. I mean, the judge is supposed to predict the future. I don't understand that. Please tell me the case. This isn't. People versus Washington state that the court. We've used the entire record, including conduct, following defendants requests to proceed. We look at the entire record. But as far as what the judge was doing here. What happened afterwards is not something we review. If something had happened beforehand. Well, that may be a different situation. Yes. We look at the entire record. What was he doing during trial? Had he been disrupted before? No. Well, the people maintain that this court should affirm. As to defending statement. His first degree murder conviction should be remanded for resentencing. The people disagree. There is no basis by which this court should determine that a resentencing on a first degree murder conviction is necessary. The court did not state that it relied on defendants. Armed habitual criminal conviction and sentencing him. The people did not rely on that conviction in arguing as to a sentence. And so there is no basis. By which this court should require defendant to be resentenced on his first degree murder conviction. It is true that the people agree that the court should vacate defendant's armed habitual criminal conviction. But we would submit this court should remand for resentencing on the two remaining. Unlawful use of a weapon by felon. Charges. The court has no other questions with respect for the request that your firm in part. Thank you, Mr. Most, Mr. Yes, just briefly, your honor. The state referenced the January, 2014 incident in which a man. Johnson. Went over to where Asia rags was staying. And a man, there was a struggle. A man tried to step in the way. And he ended up getting pushed down the stairs. The clear difference between this incident, that incident and this incident is that in that case, Johnson was targeting rags. That he was out after rags and this man got in the way and his, it was an incidental incidental result. Here. There's absolutely no evidence that the shooter was targeting rags. The shooter was targeting Lynch. And so that, that, that is a very distinguishable incident. And notably the state doesn't even try to defend the August, 2014. Which is where Johnson allegedly. Came up to rags on her bicycle and punched her in the face and stole her bike. That just has absolutely no relevance to the, to this case and was highly prejudicial in the eyes of the jury. Briefly as we're to regard to harmless air. The state points out that there were multiple eyewitnesses, but again, Johnson also presented multiple alibi witnesses. The state characterizes Johnson's alibi witnesses as you know, This are not disinterested. There is girlfriend, his friend. Well, one of the state's witnesses. All of the state's witnesses actually were friends of Lynch. And one of them was even his girlfriend or his wife. They had a child together. So to say that the state's witnesses were disinterested is, Is not accurate. And they also characterize Johnson's testimony as self-serving. Johnson's testimony was not self-serving. He was admitting to the jury that he was a criminal and a burglar. So the fact that he's willing, that he's making these admissions. Lends them a degree of credibility because why would somebody confess to being a burglar? Confess to being a robber. If it weren't actually true. And then in regard to Jamal Ray, One thing that is very significant about his testimony is that Jamal Ray had the murder weapon when the police arrived at the scene. And then he lied at trial about how he handed that murder weapon over to the police, which certainly cast doubt on his credibility. And the jury may have assessed his testimony in a completely different light. The state says that Johnson did not make a clear claim of ineffective assistance of counsel, but saying that you're denouncing your counsel is a clear claim of effect ineffective assistance of counsel. The cases don't believe justice Heiman pointed out cases don't require any sort of magic words. You know, they're the courts have in numerous decisions, as in more, and people be more, all he has to do is bring it to the court's attention. He doesn't have to say ineffective assistance of counsel. And in regard to the pro se issue, I think that this court is very right that things had definitely changed from the start of trial before trial to the sentencing hearing. Johnson even explained why things had changed, which is that he had not been kept informed about developments in his case. And as to the state's point that Johnson couldn't make a knowing and intelligent waiver, that is not, that's not true here. What Johnson told the court after he tried to represent himself the first time was that I basically, I don't think I can do a good job, but the court's belief that a defendant won't do a good job. Representing him is not a basis for denying him his request to go pro set. It's only if the defendant actually cannot understand the consequences of that waiver, which here we don't even know because the court never admonished him about the consequences of that. And with that, that is all I have. Unless your honors have any further questions. I do have a question, Mr. BNEC. Yes. If, if your request for resentencing and the murder conviction is, is granted, do you agree that the court can resentence the defendant to the same term of years that he originally opposed imposed? Of course your honor. And, and in, in regard to that, in regard to that argument specifically, I would just direct this court's attention to the decisions in people, the Alexander and people be cross. They are recent cases in which the court vacated a void Aguilar conviction and remanded for resentencing on the upheld conviction, even where there was absolutely no evidence in the record that the judge relied on the void Aguilar convictions at sentencing. And if you have no further questions, that is all I have. Thank you, Mr. Monic and Mr. Great job. Both of you have a good day. Hearing's adjourned.